# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK WASVARY, individually<br>and as the representative of a class of<br>similarly-situated persons,<br><br>       Plaintiff,<br><br>  v.<br><br>WB HOLDINGS, LLC f/k/a AIRTIME<br>TRAMPOLINE PARK TROY, LLC and f/k/a<br>AIRTIME TRAMPOLINE & GAME PARK,<br>AIRTIME TRAMPOLINE LLC d/b/a<br>AIRTIME TRAMPOLINE & GAME PARK<br>and d/b/a MICHIGAN AIRTIME,<br>MICHIGAN AIRTIME HOLDINGS, LLC<br>d/b/a AIRTIME TRAMPOLINE & GAME<br>PARK and d/b/a MICHIGAN AIRTIME,<br>MICHIGAN AIRTIME I, LLC d/b/a<br>AIRTIME TRAMPOLINE & GAME PARK<br>and d/b/a MICHIGAN AIRTIME,<br>MICHIGAN AIRTIME II, LLC d/b/a<br>AIRTIME TRAMPOLINE & GAME PARK<br>and d/b/a MICHIGAN AIRTIME, and<br>MICHIGAN AIRTIME III, LLC d/b/a<br>AIRTIME TRAMPOLINE & GAME PARK<br>and d/b/a MICHIGAN AIRTIME,<br><br>       Defendants. | Case No. 15-10750<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY<br>TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Mark Wasvary ("Plaintiff"), brings this first amended class action complaint against Defendants, WB Holdings, LLC f/k/a Airtime Trampoline Park Troy, LLC and f/k/a Airtime Trampoline & Game Park ("WB Holdings"), Airtime Trampoline LLC d/b/a Airtime Trampoline & Game Park and d/b/a Michigan Airtime ("Airtime Trampoline"), Michigan Airtime Holdings, LLC d/b/a Airtime Trampoline & Game Park and d/b/a Michigan Airtime ("Michigan Airtime"),

Michigan Airtime I, LLC d/b/a Airtime Trampoline & Game Park and d/b/a Michigan Airtime ("Michigan Airtime I"), Michigan Airtime II, LLC d/b/a Airtime Trampoline & Game Park and d/b/a Michigan Airtime ("Michigan Airtime II"), and Michigan Airtime III, LLC d/b/a Airtime Trampoline & Game Park and d/b/a Michigan Airtime ("Michigan Airtime III") (collectively "Defendants"), to stop their practice of sending unsolicited advertisements to consumers via text message in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the common law of conversion. Plaintiff's allegations are based on information and belief, except those pertaining to his own actions, which are based on personal knowledge. Plaintiff's information and belief is based on the investigation of counsel.

## INTRODUCTION

1.    This case challenges Defendants' practice of sending autodialed telemarketing calls to wireless/cellular telephones ("wireless phones") without prior express consent. As part of getting consent, telemarketers <u>must</u> inform consumers the telemarketing will be done with autodialer equipment and that consent to marketing is not a condition of purchase. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i). Here, Plaintiff did <u>not</u> give Defendants any prior express consent to receive autodialed text messages on his wireless telephone.

2.    Here, Defendants have transmitted unauthorized telemarketing to cell phones in the form of "text messages" that include or introduce advertisements for the purpose of encouraging the purchase of goods or services. 47 C.F.R. § 64.1200(a)

2

3.      The TCPA grants consumers a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation. 47 U.S.C § 227(b)(3). On behalf of himself and all others similarly-situated, Plaintiff seeks statutory damages for each violation of the TCPA by Defendants, as well as the common law of conversion.

4.      On behalf of the Class, Plaintiff also seeks an injunction requiring Defendants to cease all unlawful text messages, together with costs and reasonable attorneys' fees.

5.      Defendants' practice caused Plaintiff to sustain a number of different types of injuries including: (1) invasion of privacy and seclusion; (2) intrusion upon and occupation of the texting and operating capacity of his cell phone; (3) nuisance; (4) wasted time addressing the text spam; (5) cell phone battery depletion; (6) lost electricity needed to recharge cell phone; (7) diminished data storage capacity; and (8) frustration and annoyance.

6.      In addition to the above, some consumers might incur monetary injury by the depletion of limited texting messages or by causing consumers to incur charges for incoming texts. Or worse, consumers also face the potential risk of personal injury due to interruption or distraction as a consequence of the robo-texts.

## JURISDICTION AND VENUE

7.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

3

8.      Personal jurisdiction exists in Michigan because Defendants have transacted business and made or performed contracts substantially connected with the State.

9.      Venue is proper in the Eastern District of Michigan because Defendants committed a statutory tort within this District, Plaintiff resides in this District, and a significant portion of the events took place in this District.

## PARTIES

10.      Plaintiff is an individual who resides in Troy, Michigan.

11.      Defendant WB Holdings is a Wyoming limited liability company.  On information and belief, WB Holdings has its principal place of business in Troy, Michigan.

12.      Defendant Airtime Trampoline is a Michigan limited liability company.

13.      Defendant Michigan Airtime is a Michigan limited liability company.

14.      Defendant Michigan Airtime I is a Michigan limited liability company.

15.      Defendant Michigan Airtime II is a Michigan limited liability company.

16.      Defendant Michigan Airtime III is a Michigan limited liability company.

17.      On information and belief, Defendants comprise an organization of companies who own and operate several indoor trampoline parks in Michigan under the assumed names "Airtime Trampoline & Game Park" and "Michigan Airtime."

4

## BACKGROUND AND ENFORCEMENT OF THE TCPA

18.     This case challenges Defendants' practice of sending autodialed[1] telemarketing calls,[2] including text messages, to wireless/cellular telephones ("wireless phones") without prior express written consent.[3] And to get such consent, telemarketers <u>must</u> also tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase.[4] Plaintiff did <u>not</u> give Defendants any prior express written consent.

19.     The TCPA, passed in response to "[v]oluminous consumer complaints about abuses of telephone technology" such as "computerized calls dispatched to private homes ... bans certain invasive telemarketing practices." *Mims v. Arrow Fin. Servs., LLC,* —— U.S. ——, 132 S.Ct. 740, 744, 181 L.Ed.2d 881 (2012).

20.     Seeking to protect consumers against a growing flood of invasive and unwanted telemarketing calls, Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, *codified as amended at* 47 U.S.C. § 227, to "ban all computerized calls"—including "all

---

[1]  The TCPA defines "automatic telephone dialing system" as "equipment which has

[2]  "Calls" includes text messages. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115, para. 165 (2003) (*2003 TCPA Order*). *See also* 47 U.S.C § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 953 (9th Cir. 2009); *Gomez v. Campbell–Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014).

[3]  *See*, *e.g.*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1838, para. 20 (2012) (*2012 TCPA Order*); 47 C.F.R. § 64.1200(a).

[4] 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

autodialed calls * * * [to] cellular phones"—"unless the called party consents to receiving them, or unless the calls are made for emergency purposes." S. Rep. No. 102-178, at 6 (1991).

21.     Autodialed, unsolicited text messages or calls are often referred to as "robocalls." "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015) (hereinafter *"Rage Against Robocalls"*). An average of 200,000 complaints are made to the Federal Trade Commission ("FTC") every month about robocalls. Hearing Before the Senate Comm. on Commerce, Sci., and Transp.'s Subcomm. on Consumer Prot., Prod. Safety, and Ins. (July 10, 2013) (hereinafter "Senate Hearing") (statement of Lois Greisman, Associate Director, Division of Marketing Practices, FTC). Indeed, some estimate that 35 percent of all calls placed in the U.S. are robocalls. *Rage Against Robocalls*. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014*, at 5 (Nov. 2014).

22.     Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

23.     Unwanted text messages and calls are especially problematic when made to mobile phones, which are now ubiquitous. "People keep their cellular

phones on their person at nearly all times: in pockets, purses, and attached to belts." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005). And while "[a]n automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

24.     According to the Federal Communications Commission, "Month after month, unwanted … texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The [TCPA] and [FCC] rules empower consumers to decide which … text messages they receive, with heightened protection to wireless consumers…."[5]

25.     The FCC has stated, "Calling and texting consumers *en masse* has never been easier or less expensive" in part, because skyrocketing growth of mobile phones, rising from approximately 140 million wireless subscriber connections in 2002 to approximately 326 million in 2012.[6] Additionally, 39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."[7]

---

[5] *See* TCPA Omnibus Declaratory Ruling and Order, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd 7961, para. 1 (2015) ("2015 Omnibus Order").

[6] 2015 Omnibus Order, para. 7, n. 32.

[7] According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems (last visited: November 13, 2016.)) Plaintiffs often receive such unwanted text messages.

7

26.   "The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed [text messages] calls generate."[8] Congress found that banning such text messages, except when the texted party consents, "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* Congress therefore put the responsibility for compliance with the law directly on the party that "makes" or "initiates" autodialed text messages. *Id.*

## FACTS

27.   Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cellular/wireless subscribers.

28.   The most common form of texting is person-to-person messaging. However, text messages may also be used by automated systems to facilitate the ordering of products and services from cellular phones or for participating in contests or other marketing programs.

29.   Businesses continually seek cost-effective ways to mass market their goods and services. The popularity of cellular phones and texting has created a marketing opportunity for businesses whose telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

---

[8] 2015 Omnibus Order, para. 29, n. 102 (citing *See* S.REP. NO. 102-178, 1st Sess., 102nd Cong., (1991) at 2, 4–5).

30.    Unlike conventional advertising, text message advertising requires the use of technology (cellular phones) owned and paid for by the text message recipients.  Text message recipients often incur a charge for each incoming text message regardless of whether the message was authorized.

31.    At issue here, Defendants transmitted text messages to cellular phone users—including Plaintiff and the other members of the putative Class—to promote Defendants' products and services – most notably their indoor trampoline parks.

32.    Defendants comprise an organization of companies who own and operate several indoor trampoline parks in Michigan under the assumed names "Airtime Trampoline & Game Park" and "Michigan Airtime."

33.    Defendants caused mass transmissions of text messages to cellular phone users—including Plaintiff and members of the putative Class—to promote their indoor trampoline parks.

34.    Defendants used the third-party contractor, Callfire Inc. to send the text messages.

35.    Callfire's website contains information suggesting the use of an autodialer. *See* https://www.callfire.com ("Over 3 Billion Messages Delivered"); https://www.callfire.com/products/text-messaging ("EZ Texting, a member of the CallFire family, provides the most powerful and versatile SMS text messaging platfor on the market. EZ Texting provides easy-to-use, ROI-boosting features like drip campaigns, advanced reporting and automated contact signup tools.") (both last visited: November 13, 2016).

9

36.    On March 28, 2014, Plaintiff visited one of Defendants' locations with his son and purchased Defendants' service. At that time, Plaintiff signed an indemnity agreement that provided, among other things, Plaintiff's telephone number and contact information in case of emergency.

37.    As part of providing Plaintiff's telephone number in case of emergency for Defendants' indemnity agreement, Defendants did not ask Plaintiff express permission to send him advertising, or provide the required disclosures in order to send him text messages.

38.    On August 22, 2014, at 12:24 p.m., Defendants, or someone acting on their behalf, sent the following text message to Plaintiff's cellular phone:



39.    On January 26, 2015, at 9:10 a.m., Defendants, or someone acting on their behalf, sent the following text message to Plaintiff's cellular phone:



40.    On February 4, 2015, at 10:28 a.m., Defendants, or someone acting on their behalf, sent the following text message to Plaintiff's cellular phone:



41.    On February 4, 2015, at 10:28 a.m., Defendants, or someone acting on their behalf, sent the following text message to Plaintiff's cellular phone:



42.   Short codes, such as 670-76 used in the instant case, suggest the use of an autodialer as well.

43.   Screenshots of the text messages Plaintiff received are attached as Exhibit A.

44.   Plaintiff did not expressly consent to receive Defendants' autodialed telemarketing calls to his cell phone.

45.   Further, Defendants never clearly and conspicuously disclosed to Plaintiff that he was somehow consenting to receive automated text calls and that he was not required to consent to such calls in order to purchase Defendants' property, goods, or services.

46.   Plaintiff did not expressly invite or permit Defendants to send advertising material, including the text messages contained in Exhibit A, to his cellular phone by text message.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly-situated persons (the "Class"). The Class is initially defined as follows: "All cellular telephone account holders with a telephone number to which at least one text message was sent in 2014 or 2015 advertising the commercial availability or quality of AirTime's property, goods, or services and sent without the recipient's prior express invitation or permission ("consent") to receive advertisements by text message or without informing them such consent was not a condition of purchase." (Plaintiff reserves the right to change the class definition during this litigation.) Specifically excluded from the Class are the following persons: (a) Defendants and their respective affiliates, employees, officers, directors, agents, and representatives and their immediate family members; (b) Class Counsel, including all of their employees; and (c) the judges who preside over this litigation, including the members of their immediate families.

48.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.   This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the Class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

13

49. **Numerosity/Impracticality of Joinder:** On information and belief, the Class is so numerous that joinder of all Class members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendants' records or the records of third parties. On information and belief, the Class includes thousands of persons.

50. **Ascertainability:** The Class is clearly defined based on objective criteria, permitting Class members to be identified. On information and belief, the members of the Class may be identified from Defendants' records or the records of third parties.

51. **Commonality and Predominance:** There is a well-defined community of interest among the Class members and common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

   a. Whether Defendants' automated text messages or calls—including those contained in Exhibit A—contained material advertising the commercial availability of any property, goods, or services;

   b. Whether the equipment Defendants or third parties such as Callfire Inc. used to send the text messages in question was an automated telephone dialing system as defined by the TCPA;

14

c.    Whether the means by which Defendants acquired Plaintiff and Class members' cellular phone numbers clearly and conspicuously informed Class members they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

d.    Whether the means by which Defendants acquired Plaintiff and Class members' cellular phone numbers clearly and conspicuously informed Class members that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

e.    Whether Defendants' conduct is governed by the TCPA;

f.    Whether Defendants' automated text message telephone calls, including those contained in <u>Exhibit A</u>, violated the TCPA;

g.    Whether the Class members are entitled to statutory damages;

h.    Whether Defendants should be enjoined from sending future text message advertisements in violation of the TCPA;

i.    Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class

52.    **Typicality:**  Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices.  Plaintiff and the other Class members received text message

advertisements from Defendants without first providing their express invitation or permission. Under the facts of this case, because the focus is on Defendant's conduct, if Plaintiff prevails on his claims, then the Class members must necessarily prevail as well.

53. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interest of the Class members he seeks to represent. Plaintiff has retained financially able attorneys who are competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. *See* Group Exhibit B. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

54. **Superiority:** A class action is the superior method for the fair and efficient adjudication of this lawsuit because individual litigation of each Class members' claims would be economically infeasible and procedurally impracticable. The individual damages incurred by each Class member as a result of Defendants' wrongful conduct are too small to warrant the expenses of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in controlling the prosecution of separate actions. Furthermore, individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the

same factual issues. Plaintiff foresees no difficulty in the management of this action as a class action. The Class members and their damages may be determined based upon information maintained by or available to Defendant.

## CLAIM FOR RELIEF.

### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

55.     Plaintiff brings claim on behalf of himself and the putative Class pursuant to the TCPA.

56.     Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

57.     The TCPA provides in pertinent part as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –

. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

[47 U.S.C. § 227 (b) (1) (A) (iii).]

58.     The Federal Communications Commission ("FCC") regulations also provide in pertinent part:

(a)     No person or entity may:

(2)     Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a) (1) (i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 C.F.R. § 64.1200.

59.     Defendant's text messages to Plaintiff and the other class members included or introduced an advertisement or constituted telemarketing.

60.     The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of ... goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

61.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

62.     Before sending a text message during the relevant time period, the party sending the text message must obtain "prior express written consent" from the called party. "Prior express written consent" must:

18

a. Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;

b. Specify the telephone number to which the person is consenting to be called;

c. Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and

d. Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

63.     Defendants made telephone solicitations, including but not limited to the text messages recited above, to the wireless telephone numbers of Plaintiff and other members of the Class.

64.     Defendants sent unsolicited commercial text calls to Plaintiff and the other members of the Class using an automated telephone dialing system.

65.     Defendants sent these text calls without first obtaining the called parties' prior express, written consent.

66.     Defendants knew or should have known that they lacked the recipients' express, written consent to send these text calls.

67.     Defendants sent these text calls without first clearly and conspicuously disclosing to the recipients that they were providing consent to receive calls using an automatic telephone dialing system or an artificial prerecorded voice and that such consent was not required to purchase Defendants' property, goods, or services.

68.     Defendants violated the TCPA by sending these text calls to Plaintiff and the Class without first obtaining their prior express written consent.

19

69.     Defendants violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiff and the Class.

70.     Defendants have harmed consumers by sending these text messages, not only because consumers were subjected to the aggravation that accompanies unsolicited wireless spam, but also because many consumers pay to receive text messages.

71.     Defendants' practice caused Plaintiff to sustain a number of different types of injuries including: (1) invasion of privacy and seclusion; (2) intrusion upon and occupation of the texting and operating capacity of his cell phone; (3) nuisance; (4) wasted time addressing the text spam; (5) cell phone battery depletion; (6) lost electricity needed to recharge cell phone; (7) diminished data storage capacity; and (8) frustration or annoyance.

72.     In addition to the above, other consumers also might incur monetary injury by the depletion of limited texting messages or by causing consumers to incur charges for incoming texts. Or, worse, consumers also face the potential risk of personal injury due to interruption or distraction as a consequence of the robo-texts.

73.     Plaintiff and each class member thereby suffered damages as a result of their receipt of Defendants' unsolicited commercial text calls.

74.     The unsolicited commercial text calls sent to Plaintiff and the Class members were sent using equipment that had the capacity to store telephone numbers that were either retrieved from Defendants' database or from other source of cell phone number lists and to dial such numbers. The equipment can also be

programmed to generate and dial random or sequential numbers. By using such equipment, Defendants were able to send text messages simultaneously to thousands of wireless telephone numbers en masse without human intervention.

75.     The text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the Class members and without first providing the required disclosures.

76.     Defendants' conduct in sending such unsolicited commercial text calls violates 47 U.S.C. § 227(b)(1)(A)(iii).

77.     Defendants' conduct in sending these text messages was a knowing and willful violation of 47 U.S.C. § 227.

78.     As a result of Defendants' violation, the members of the Class suffered actual damages by, *inter alia*, having to pay their respective wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 for each if Defendant's violations of the TCPA are determined to be knowing or willful.

79.     The Court should enjoin Defendants from sending future text messages without the written consent of the called party.

## COUNT II – CONVERSION

80.     Plaintiff incorporates the preceding paragraphs up to Count I as though fully set forth herein.

81.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

82.     By sending unsolicited commercial text calls to Plaintiff and the other Class members, Defendants improperly and unlawfully converted their cellular lines, limited minutes recipients paid for, the battery life of a recipient's cell phone, capacity of a recipient's cell phone, and the cost of electricity used to recharge a recipient's cell phone. Defendants also converted Plaintiff's and the other Class members' time.

83.     Immediately prior to the sending of the unsolicited commercial text calls, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their cellular lines, limited minutes recipients paid for, the battery life of a recipient's cell phone, capacity of a recipient's cell phone, and time.

84.     By sending unsolicited commercial text calls, Defendants permanently misappropriated the Class members' cell phones, limited minutes, battery life, capacity of a recipient's cell phone, and time for their own use. Such misappropriation was wrongful and without authorization.

85.     Defendants knew or should have known that their misappropriation was wrongful and without authorization.

86.     Plaintiff and the other Class members were deprived of the use of their cell phones, limited minutes, battery life, capacity on their cell phones, and time, which could no longer be used for any other purpose. Plaintiff and each class

member thereby suffered damages as a result of their recipient of Defendants' unsolicited commercial text calls.

## PRAYER FOR RELIEF

As to Count I, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in favor of the Class and against Defendants as follows:

     a.    That the Court find that this case may be maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

     b.    That the unlawful conduct alleged herein be declared to be illegal and in violation of the TCPA;

     c.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

     d.    That the Court treble the statutory damages if it concludes that Defendants' violations were willful or knowing;

     e.    That the Court enter an injunction prohibiting Defendants from engaging in the same or similar practices alleged herein;

     f.    That the Court enter judgment against Defendants and in favor of Plaintiff and members of the Class;

     g.    That Plaintiff and members of the Class recover their costs of the suit, and attorneys' fees as allowed by law; and

That the Court award all other relief allowed by law or equity. As to Count II, Plaintiff, individually and on behalf of all others similarly situated, demands

judgment in its favor and against Defendants as follows:

a.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff' counsel as counsel for the class;

b.      That the Court award appropriate damages;

c.      That the Court award punitive damages;

d.      That the Court award reasonable attorneys' fees;

e.      That the Court award costs of the suit; and

f.      That the Court award such further relief as it may deem just and proper.

Dated: November 13, 2016            Respectfully submitted,

MARK WASVARY, individually and as the representative of a class of similarly-situated persons,

By:     /s/ Phillip A. Bock
        One of Plaintiff's attorneys

Phillip A. Bock
Tod A. Lewis
Christopher P.T. Tourek
BOCK, HATCH, LEWIS, & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Phil@classlawyers.com
Telephone: 312-658-5500
Fax: 312-658-5555

Jason Thompson
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900 Southfield, MI
48075 Telephone:
248/355-0300
jthompson@sommerspc.com

# EXHIBIT A



●●●○○ Verizon 📶     11:33 AM     ⁂ 94% ▰

‹ Messages     **670-76**     Contact

Mon, Jan 26, 9:10 AM

JUMP ON IN to AirTime for MLK Day at all 3 parks from 10am-9pm. Reserve your time now @ www.airtimetramp oline.com. Reply STOP to opt out

Today 10:28 AM

📷   Text Message    Send



●●●●○ Verizon 🛜  **2:08 PM**  📶 72% 🔋

‹ Messages    **670-76**    Contact

STOP to opt out

**Thu, Feb 19,** 10:07 AM



It's way too cold to go outside and play JUMP ON IN to AirTime today! Open @ 10am all week long. www.airtimetramp oline.com  Reply STOP to opt out



📷 | Text Message | Send

# EXHIBIT B

# BOCK & HATCH, LLC

## FIRM RESUME AND INDIVIDUAL ATTORNEY BIOGRAPHIES

# BOCK & HATCH, LLC

The firm's lawyers work exclusively on class actions pending in state and federal courts in Illinois and several other states.  We currently represent classes that were certified over the defendants' objections, settlement classes in ongoing third-party litigation, and putative classes working their way toward class certification.

## CONTESTED CLASSES:

Courts have appointed the firm's lawyers as class counsel in many contested class certifications.  These include:

*Amato v. Professional National Title Network*, No. 01 CH 12616 (Circuit Court of Cook County, IL).

*Austria v. Option One*, 01 CH 12615 (Circuit Court of Cook County, IL).

*Babb Real Estate LLC, v. Bennett and Olstad*, 10-cv-119-wmc, Opinion and Order (W.D. Wisc. July 29, 2011) (TCPA litigation).

*BNS, Limited v. Redondo Famil Chiropractic, Inc.*, No. 09-2-19352-5 SEA, June 9, 2010 (Superior Court of the State of Washington, County of King).  (TCPA litigation).

*Bridgeview v. Clark*, 09 C 5601, Memorandum Opinion and Order (N.D. Ill. Sept. 30, 2011) (Valdez, J.).  (TCPA litigation).

*Bouschard v. Cingular Wireless, Inc.*, No. 01 MR 718 (Circuit Court of Lake County, IL).

*CE Design v. Beaty Construction, Inc.*, Case No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) (Hibbler, J.) (TCPA litigation).

*CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill., Kennelly, J.) *app. denied* (Sept. 9, 2009).  (TCPA litigation).

*CE Design v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, * 6 (N.D. Ill. Dec. 13, 2010), *reversed on other grounds*, *CE Design Limited v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011) (TCPA litigation).

*CE Design v. Letrix USA, Inc.*, 06 CH 26834, Aug. 30, 2010 (Circuit Court of Cook County, IL).  (TCPA litigation).

*CE Design v. Matrix LS, Inc.*, No. 05 L 269 (Circuit Court of Lake County, IL). (TCPA litigation).

*CE Design v. The Tradeshow Network Marketing Group*, 03 CH K 964 (Circuit Court of Kane County, IL). (TCPA litigation).

*Creative Montessori Learning Center v. Ashford Gear*, No. 09 C 3963, Memorandum Opinion and Order (N.D. Ill. July 27, 2011) (Gettleman, J.) (TCPA litigation).

*Critchfield Physical Therapy v. The Taranto Group, Inc.,* --- P.3d ---, 2011 WL 4505794, **10-11 (Kansas, Sept. 30, 2011) (TCPA litigation).

*Defrates v. Hollywood Video Entertainment Corporation*, No. 02 L 707 (Circuit Court of St. Clair County, IL).

*Duenas v. Trend Technologies, et al.*, 03 C 801 & 04 C 212 (N.D. Ill., Kennelly, J.).

*Irish Sisters, Inc. v. Crown Mortgage Co.*, 09 CH 10688, Memorandum and Order, (Cook Cty. Cir. Ct. June 20, 2011) (Quinn, J.) (TCPA litigation).

*G.M. Sign, Inc. v. 400 Freight Services, Inc.*, No. 07 CH 2772 (Circuit Court of Lake County, IL). (TCPA litigation).

*G.M. Sign, Inc. v. BackHauLine, Inc.*, No. 07 CH 758 (Circuit Court of Lake County, IL). (TCPA litigation).

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) (Kendall, J.). (TCPA litigation).

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 06 C 949 (N.D.Ill., Kocoras, J.). (TCPA litigation).

*G.M. Sign, Inc. v. Group C. Communications, Inc.*, 08 CV 4521, 2010 WL 744262, (N.D. Ill., Feb. 25, 2010, Darrah, J.). (TCPA litigation).

*Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009)(Hibbler, J.). (TCPA litigation).

*Hall v. Sprint*, 04 L 113 (Circuit Court of Madison County, IL), affirmed, 376 Ill. App. 3d 822, 876 N.E.2d 1036 (5th Dist. 2007), petition for leave to appeal denied, 226 Ill. 2d 614 (Ill. 2008).

3

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.) (certifying class); *Holtzman*, 2010 WL 3076258 (Aug. 3, 2010) (granting partial summary judgment on behalf of class); *Holtzman*, 2011 WL 3876943, *4 (Aug. 29, 2011) (summary judgment awarding $4,215,000 to plaintiff class) (TCPA litigation).

*Heger v. Attorneys Title Guaranty Fund, Inc*, No. 03 L 398 (Circuit Court of Lake County, IL).

*Hinman v. M&M Rentals*, 545 F. Supp. 2d 802 (N.D. Ill., Bucklo, J.), petition for leave to appeal denied, June 17, 2008. (TCPA litigation).

*Hunter v. Ramada Franchise Systems, Inc.*, No. 01 CH 5751 (Circuit Court of Cook County, IL).

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009)(Gettleman, J.) (certifying class); 2010 WL 3076258 (Aug. 3, 2010)(granting summary judgment on behalf of class). (TCPA litigation).

*JT's Frames v. The Sunhill NIC Company, Inc.*, 07 CH 436, Order (McHenry Cty. Cir. Ct., June 15, 2011) (TCPA litigation).

*Maulding v. Hilton Hotels Corporation*, No. 02-L-0645 (Circuit Court of St. Clair County, IL).

*Mixon Ins. Agency, Inc. v. Taylorville Chiropractic, et al*, No 09 L 0509, Class Certification Order (St. Clair Cty. Cir. Ct. Aug. 8, 2011) (Cueto, J.) (TCPA litigation).

*Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) (Kennelly, J.) (TCPA litigation).

*P.J.'s Concrete Pumping Service v. Nextel Wireless*, No. 01 MR 860 (Circuit Court of Lake County, IL), *aff'd*, 345 Ill. App. 3d 992, 803 N.E.2d 102 (2d Dist. 2004), petition for leave to appeal denied, 209 Ill. 2d 584, certiorari denied.

*Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F.Supp.2d 894 (N.D. Ill., Shadur, J.). (TCPA litigation).

*Telecommunications Network Design, Inc. v. McLeod USA, Inc.*, 03 CH 8477 (Circuit Court of Cook County, IL). (TCPA litigation).

*Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 09 CH 16028, Memorandum and Order (Cook Cty. Cir. Ct. Aug. 10, 2011) (TCPA litigation).

*Welles v. Sprint Corporation*, No. 01 CH 1387 (Circuit Court of Cook County, IL).

*Windmill Nursing Pavillion, LTD. v. Res-Care Illinois, Inc.*, 09 CH 16377, Memorandum Opinion and Order (Cook Cty Cir. Ct. Mar. 18, 2011)(Quinn, J.) (TCPA litigation).

*Wratchford v. CBSK Financial,* 02 L 1555 (Circuit Court of Madison County, IL).

*Wratchford v. Accredited Home Lenders*, 02 L 1556 (Circuit Court of Madison County, IL).

## SETTLEMENT CLASSES:

We have represented classes in dozens of class action settlements.

## OTHER PENDING CLASS ACTIONS:

We are litigating dozens of putative class actions in state and federal courts.

# PHILLIP A. BOCK

<u>Manager of the Firm/Managing Attorney</u>

<u>EDUCATION</u>

### University of Virginia School of Law

Degree:  J.D., 1994

Honors:  Editorial Board of the Virginia Tax Review; Research Clerk for Professor Jeffrey O'Connell; Co-author of "Blending Reform of Tort Liability and Health Insurance:  A Necessary Mix.  Part II:  The Data," 79 CORNELL L. REV. 1315; Moot Court.

### University of Illinois at Urbana-Champaign

Degree:  M.A., 1991 (Political Science)

Honors/Activities:  University Fellowship Recipient; Research Assistant for the Merriam Laboratory for Analytic Political Research; Instructor of Urban/Metropolitan Government; Student Representative on the Faculty Senate; Member of the Faculty Senate Student Disciplinary Committee.

### Augustana College

Degree:  B.A. (Business Administration/Political Science)

Honors/Activities:  Phi Beta Kappa; Dean's List; Political Science Book Award; President of the Pre-Law Club; Co-Chair of the Student Judiciary Committee; Student Representative on the Admissions and Financial Aid Committee; Teaching Assistant for Professors Harold Bell and David Dehnel.

<u>ADMISSIONS</u>

Illinois, Nov. 10, 1994

United States District Court for the Northern District of Illinois, Dec. 20, 1994

United States District Court for the Southern District of Illinois, 2002

United States Court of Appeals for the Seventh Judicial Circuit, 2003

United States Court of Appeals for the Third Judicial Circuit, 2007

## CURRENT PROFESSIONAL ORGANIZATIONS

Lake County Bar Association

Chicago Bar Association

## APPELLATE EXPERIENCE IN CLASS ACTIONS

U.S. Court of Appeals for the Seventh Circuit, U.S. Court of Appeals for the Third Circuit, U.S. Court of Appeals for the Sixth Circuit, Supreme Court of Illinois, Illinois Court of Appeals for the First District, Illinois Court of Appeals for the Second District, Illinois Court of Appeals for the Fifth District, California Court of Appeals.

# ROBERT M. HATCH

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch, LLC (f/k/a Diab & Bock, LLC)

Attorney: July 22, 2005 to Present

### Diab & Bock (f/k/a Macey Chern & Diab)

Of Counsel: 2001 to July 22, 2005

### Lovells

Partner: 1998 to 2001

Associate: 1995 to 1998

### Sidley & Austin

Associate: 1990 to 1995

## EDUCATION

### Wayne State University

Degree: J.D., 1990

Honors: Cum Laude, Order of the Coif

### University of Michigan

Degree: B.A., 1986

## ADMISSIONS

Illinois, 1990

United States District Court for the Northern District of Illinois, 1990

Michigan, 1992

United States Court of Appeals for the Seventh Circuit, 1996

United States District Court for the District of Arizona, 1997

Hawaii, 2002

## PROFESSIONAL ORGANIZATIONS

### Chicago Bar Association

Member: 1991 to Present

Chair: Consumer Credit Committee 1999

### Asian American Bar Association for the Greater Chicago Area

Member: 1991 to Present

Chair: Legislative and Judicial Developments Committee 1992-94

Awards: Member of the Year Award 1993

## PUBLISHED ARTICLES

"RICO Theories, Cases and Strategies In Consumer Litigation: Strategies for Defending Section 1962 Claims," 53 Consumer Finance Law Quarterly Report 140 (1999)

"*Taylor v. Quality Hyundai, Inc.:* Assignee Liability Under Section 1641(a) of the Truth in Lending Act," 52 Consumer Finance Law Quarterly Report 354 (1998)

## PRIOR CONSUMER CLASS ACTION EXPERIENCE

*Ashley v. Associates Corporation of North America*, No. 1:97-CV-1451 (N.D. Ga.)

*Associates Financial Services Corporation v. Rutter*, No. 98 CV 242 (Court of Common Pleas, Fairfield County, Ohio)

*Associates Financial Services Corporation v. Hull*, No. 98 CVE-01-442 (Court of Common Pleas, Franklin County, Ohio)

*Barboza v. Ford Consumer Finance Company*, No. 94-12352-GAO (D. Mass.)

*Bornhorst v. Primus Automotive Financial Services, Inc.*, No. 1:96 CV 1421 (N.D. Ohio)

*Boyd v. Associates Finance, Inc.*, No. 99 CH 16604 (Circuit Court of Cook County)

*Bruyer v. Ford Motor Credit Company*, No. 97-549 (D. Minn.)

*Caldwell v. Greater Illinois Title Company*, No. 01 CH 11452 (Circuit Court of Cook County) (Illinois class certified and settled)

*Carter v. Associates Financial Services Company, Inc.*, No. 96-04652-1 (District Court of Dallas County, 162d Judicial District, Texas)

*Cheng v. Ford Motor Credit Company*, No. 97 C 1711 (N.D. Ill.)

*Chin v. Chicago Title*, No. 01 CH 9890 (Circuit Court of Cook County) (statewide class certified and settled)

*Christakos v. Intercounty Title Company*, No. 99 C 8334 (N.D. Ill.)

*Coleman v. Associates National Bank*, No. 97 C 5959 (N.D. Ill.)

*Crawford v. Associates Corporation of North America*, No. 97-14346 (22d Judicial District Court, Parish of St. Tamany, Louisiana)

*DeLeon v. Beneficial Construction Company*, No. 97 C 0040 (N.D. Ill.)

*Denton v. Associates Finance, Inc.*, No. 96 CH 10494 (Circuit Court of Cook County)

*Dixon v. Associates Financial Services Company of Florida, Inc.*, No. 96-16-CIV-FTM-24D (M.D. Fla.)

*Djordjevic v. Jacobs Twin Buick, Inc.*, No. 97 CH 10883 (Circuit Court of Cook County)

*Drehobl v. Guaranty Home Equity Corporation*, No. 00 C 4181 (N.D. Ill.)

*Fallon v. Ford Motor Credit Company*, No. 95 L 933 (Circuit Court for the 18th Judicial Circuit, DuPage County, Illinois)

*Fillinger v. Ford Motor Credit Company*, No. 96 C 2357 (N.D. Ill.)

*Fitez v. Fairfield Ford, Inc.*, No. 95 L 756 (Circuit Court for the 18th Judicial Circuit, DuPage County, Illinois)

10

*Gonzales v. Associates Financial Corp.*, (District Court, Sedgwick County Kansas)

*Goodwin v. Ford Motor Credit Company*, 97 T 3155 (M.D. Ala.)

*Gray v. SunStar Acceptance Corporation*, No. 96 C 186 (N.D. Ill.)

*Grimaldi v. Patrick Webb, Jr.*, No. 97 CH 933 (Circuit Court of Cook County)

*Groth v. TranSouth Financial Corp.*, No. 95 C 5429 (N.D. Ill.)

*Hostettler v. Ford Motor Credit Company*, No. IP96-08979-C-B/S (S.D. Ind.)

*In re Ford Motor Credit Company Motor Vehicle Lease Litigation*, No. MDL 1160 (S.D.N.Y.)

*J. Cotey, Inc. v. Ford Motor Credit Company*, No. 96 CH 4887 (Circuit Court of Cook County)

*Knight v. Ford Motor Credit Company*, No. 334772 (Court of Common Pleas, Cuyahoga County, Ohio)

*Locke v. Associates First Capital Corporation*, No. 99-542-PER (S.D. Ill.)

*Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33 (1994)

*Morrow v. Associates Financial Services Corporation (Ohio)*, No. C-3-96-379 (S.D. Ohio)

*Myers v. Kentucky Finance, Inc.*, No. 97-C-288-1 (Circuit Court of Harrison County, West Virginia)

*Noble v. Associates Financial Services Corporation*, No. 99 C 4887 (N.D. Ill.)

*Patton v. J.B. Robinson Jewelers, Inc.*, No. 97 C 4151 (N.D. Ill.)

*Paul's Pest Control, Inc. v. Ford Motor Credit Company*, No. 2:97-601 (E.D. La.)

*Reed v. Worldwide Financial Services, Inc.*, No. 98 C 4294 (N.D. Ill.)

*Richardson v. Associates Financial Life Insurance Company, Inc.*, No. 315343 (Court of Common Pleas, Cuyahoga County, Ohio)

*Rosen v. Primus Automotive Financial Services, Inc.*, No. CT 98-002733 (District

Court for the 4th Judicial District, Hennepin County, Minnesota)

*Rubin v. Associates Financial Life Insurance Company, Inc.*, No. 3:96 CV 393/LAC (N.D. Fla.)

*Sanchez v. GN Mortgage Corporation*, No. 99 C 4286 (N.D. Ill.)

*Sartory v. Ford Motor Credit Company*, No. 96 8609 (S.D. Fla.)

*Smith v. Associates Finance, Inc.*, No. 99 C 6175 (N.D. Ill.)

*Stevens v. Associates Finance, Inc.*, No. 95 C 2278 (N.D. Ill.)

*Stewart v. Associates Consumer Discount Company*, No. 97-CV-4678 (E.D. Pa.)

*Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998)

*Troup v. Associates Financial Services Company, Inc.*, No. 3:98 CV 0280 RM (N.D. Ind.)

*Urbanek v. Associates Financial Services Company of Wisconsin, Inc.*, No. 97-CV-210 (Circuit Court of Wood County, Wisconsin)

*Werbowsky v. Ford Motor Credit Company*, No. 95 Civ. 1876 (S.D.N.Y.)

*Wheeler v. TranSouth Financial Corporation*, No. 5:97-CV754.BR(3) (E.D.N.C.)

*Williams v. TranSouth Financial Corporation*, Nos. 96 B 24867, 98 A 00875 (N.D. Ill. Bankr.)

*Winn v. Associates First Capital Corporation*, No. 99 C 1227 (Circuit Court of Madison County, Illinois)

# TOD A. LEWIS

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch, LLC (f/k/a Diab & Bock, LLC)

Attorney: January 2008 to Present

### Esopus Creek Capital

October 2006 to December 2007

### Freed & Weiss LLC

Attorney: April 2000 to September 2006

### Horvath & Lieber, P.C.

January 1999 to March 2000

### U.S. Dept. of Housing and Urban Development, Office of Inspector General

September 1990 to December 1998

### U.S. Attorney's Office – Northern District of Illinois

Intern – Fall 1997

## EDUCATION

### Illinois Institute of Technology – Chicago-Kent College of Law

Degree: Juris Doctor, May 1998 (Honors)

Honors: G.P.A.: 3.528/4.000; Class Rank – Top 14% (51/360); Dean's List – All Semesters; Academic Scholarships: (1) Kent Merit Scholar (three time recipient); (2) John H. Cox Scholar; (3) Edmund L. Grimes Scholar; (4) Shirley Schmidt Scholar.

### Western Michigan University, Kalamazoo, Michigan

Degree: Bachelor of Business Administration, June 1990 – Major: Accountancy

Honors: Beta Alpha Psi Fraternity (Scholastic Honorary)

## ADMISSIONS

Illinois, 1998

United States District Court for the Northern District of Illinois, 1998

## PUBLISHED ARTICLES

*The Illinois Whistleblower Reward and Protection Act and its Qui Tam Provisions*, 88 Illinois Bar Journal 392 (2000)

# JONATHAN B. PIPER

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch, LLC

Attorney: March 19, 2012 to Present

### Cascino Vaughan Law Offices Ltd.

Attorney: November 19, 2011 to March 16, 2012

### LakinChapman LLC

Attorney: March 1, 2007 to November 17, 2011
Opened Firm's Chicago Office

### Freed Weiss LLC

Attorney: May 31, 2003 to February 1, 2007

### Office of the State Appellate Defender

Attorney: May 1, 2002 to May 31, 2003

### Sonnenschein Nath & Roshenthal

Attorney: September 1, 1987 to April 31, 2002

## EDUCATION

### The Yale Law School

Degree: J.D., 1987

### Princeton University

Degree: A.B. 1981, Religion.

Honors/Activities: Magna cum Laude; Phi Beta Kappa.

## ADMISSIONS

Illinois, 1987

15

United States District Court for the Northern District of Illinois, 1987

United States District Court for the Southern District of Illinois, 2007

United States Court of Appeals for the Seventh Circuit, 1989

## PRIOR CLASS ACTION EXPERIENCE

Numerous class actions representing consumers who have purchased defective products or have been defrauded by unfair business practices.

# JAMES M. SMITH

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch, LLC

Attorney: April 16, 2008 to Present

### Horwitz, Horwitz & Associates, Ltd.

Attorney: 2005 to April 15, 2008

## EDUCATION

### The John Marshall Law School

Degree: J.D., 2005

Honors: Executive Member of Moot Court Honors Program

### Lewis University

Degree: B.A. 2000

Honors/Activities: Harold M. Finley scholarship, president of pre-law club, member of mock trial team, vice president of Phi Kappa Theta, Dean's List,

## ADMISSIONS

Illinois, 2005

United States District Court for the Northern District of Illinois, 2005

United States District Court for the Southern District of Illinois, 2005

United States Court of Appeals for the Seventh Circuit, 2007

## PRIOR CLASS ACTION EXPERIENCE

Numerous class actions representing consumers who have purchased defective products or have been defrauded by unfair business practices.

# JULIA L. TITOLO

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch, LLC

Attorney: August 5, 2013 to Present

### JP Morgan Chase

Consultant: August 2012 to July 2013

### The Bellows Law Group, PC

Attorney: March 2011 to March 2012

## EDUCATION

### The University of Georgia School of Law

Degree: J.D., 2010

Honors: Law School Association Scholarship recipient (2007-2010), Winner of the American Bar Association Section of Intellectual Property Law and the Bureau of National Affairs Award for Excellence in the Study of Intellectual Property Law (2010)

Senior Notes Editor, University of Georgia School of Law Journal of Intellectual Property Law

### The University of Georgia

Degree: B.A. 2005

Honors/Activities: *magna cum laude*, Dean's List, semester at Oxford University, Oxford, England

## ADMISSIONS

Illinois, 2010

Georgia, 2011

United States District Court for the Northern District of Illinois, 2013

18

# Christopher Tourek

## PROFESSIONAL EMPLOYMENT

### Bock & Hatch LLC

Attorney:  May 2014 through Present

### Equip For Equality, Chicago, Illinois

Volunteer Attorney: November 2013 through May 2014

## EDUCATION

### University of Illinois College of Law

Degree: *Juris Doctor*, 2013

Honors/Activities: Dean's List, Fall 2010; Honors in Legal Research;
Pro Bono Notation; Frederick Douglass Moot Court, Fall 2011;
Graduated *Cum Laude*; Federal Civil Rights Clinic

### Lafayette College

Degree: B.A. 2010

## ADMISSIONS

Illinois, 2013

United States District Court for the Northern District of Illinois, 2014