## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK WASVARY, individually and )
as the representative of a class of )
similarly-situated persons, )
         )
               Plaintiff, )
         )
         v. )   Case No. 15-cv-10750
         )
WB HOLDINGS, LLC f/k/a )   Hon. Sean F. Cox
AIRTIME TRAMPOLINE PARK )
TROY, LLC, et al., )
         )
              Defendants. )

## PLAINTIFF'S BRIEF IN SUPPORT
## OF FINAL APPROVAL OF SETTLEMENT

Jason Thompson
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield. MI 48076
Telephone: (248) 415-3206
Facsimile: (248) 746-4001

Phillip A. Bock
David M. Oppenheim
BOCK, HATCH, LEWIS &
OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................i

INDEX OF EXHIBITS .......................................................................... iii

INDEX OF AUTHORITIES ...................................................................iv

STATEMENT OF THE ISSUES.............................................................x

CONTROLLING AUTHORITY ............................................................xi

INTRODUCTION....................................................................................1

    I.  Preliminary approval and dissemination of notice.....................1

    II. Background and summary of settlement. ...................................2

    III.       The Settlement Class was appropriately notified
       about the settlement...................................................................9

ARGUMENT .........................................................................................11

    I.  The Court should approve the Settlement. ...............................11

       A. Standard for judicial evaluation and approval. ...............11

       B. Factors to be considered in determining whether a
          settlement is fair, reasonable, and adequate..................12

          1.  The risk of fraud or collusion. ................................12

          2.  The complexity, expense and likely duration of
             the litigation. ..........................................................13

          3.  The amount of discovery.........................................13

          4.  Likelihood of success on the merits........................14

          5.  Opinion of Class Counsel and the Class
             Representative........................................................14

          6.  The reaction of absent class members. ..................16

          7.  The public interest...................................................17

    II. Attorneys' fees and costs from the Settlement Fund are
       fair, reasonable, and appropriate.............................................18

A. The Court should approve Defendants' agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.....................................................19

B. The requested fee is within the market rate for this type of case........................................................21

III.    The Court should approve the agreed incentive payment to Plaintiff.................................................25

CONCLUSION ........................................................27

# INDEX OF EXHIBITS

Declaration of Dorothy Sue Merryman ................................................... A

Class Counsel's Expenses .......................................................... B

Class-settlement.com Invoice.................................................... C

# INDEX OF AUTHORITIES

## Cases

*A & L Indus., Inc. v. P. Cipollini, Inc.*, 12-07598, 2013 WL 5503303 (D. N.J. 2013) ............................................................. 18

*Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) ..................................... 29

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. July 24, 2012) ............. 17

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) .............. 32

*Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) .............................................. 31

*Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986) ...................................................... 26

*Bennett v. Roark Capital Group, Inc.*, Case No. 2:09-cv-00421, 2011 WL 1703447 (D. Maine, 2011) .............................. 29

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................... 24

*Brent v. Midland Funding, LLC*, 2011 WL 3862363 (N.D. Ohio 2011) ......................................................................... 13, 24

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) .......................................................................................... 26

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ................. 2, 3

*CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009) ...................... 19

*CE Design, Ltd. v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, *6 (N.D. Ill. Dec. 13, 2010) .............. 19

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D. N.J. 2013) .................................................... 18

*Compressors Engineering Corp. v. Thomas*, Case No. 10-CV-10059 (E.D. Mich. Apr. 20, 2011) ............................................... 17

*Cook v. Niedert, et al.*, 142 F.3d 1004 (7th Cir. 1998) ................... 36

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................... 15

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ......................................................... 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................. 19

*G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010) ....................................... 19

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ........................... 30

*GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486 (1st Dist. 1992) .................................................................................. 38

*Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill., June 22, 2009) ................. 20

*Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) ................................................................................... 32, 38

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................... 34

*Hinman v. M & M Rentals*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008) ............................................ 20

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997) ............................... 22

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D.Ky.1987) ...................... 29

*Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012) ............................................ 18

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) ............... 31, 37

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D.Cal.1989) ..... 27

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163 (S.D.N.Y. 2000) ................................................. 22

*In re Automotive Refinishing Paint Antitrust Litig.*, 2008
    WL 63269 (E.D. Pa. Jan. 3, 2008) ................................................ 33

*In re Cincinnati Gas & Elec.*, 643 F. Supp. 148 (S.D.Ohio
    1986).................................................................................................. 29

*In re Continental Illinois Securities Litig.*, 962 F.2d 566 (7th
    Cir. 1992............................................................................................ 35

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297
    (N.D. Ga. 1993) ................................................................................ 15

*In re Dun & Bradstreet Credit Services Customer Litigation*,
    130 F.R.D. 366 (S.D. Ohio 1990) ................................................ 36

*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-
    10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005).........37

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002
    (N.D. Ill. 2001) ................................................................................ 21

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) 28, 36

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D.Ohio 1997),
    *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir.2001).........28

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp.
    525 (E.D. Pa. 1990) ...................................................................... 22

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir.2005) ... 26, 27

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D.Ohio
    2001)................................................................................................... 28

*In re Thirteen Appeals Arising Out of the San Juan DuPont
    Plaza Hotel Fire Litig.*, 56 F. 295 (1st Cir. 1995).....................25

*Int'l Union, United Auto, Aerospace and Implement Workers
    of America v. General Motors Corp.*, 497 F.3d 615 (6th
    Cir. 2007) ................................................................................... 12, 13

*Int'l Union, United Auto., Aerospace, and Agr. Implement
    Workers of America v. Gen. Motors Corp.*, 497 F.3d 615
    (6th Cir. 2007).............................................................................. 23

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .................................... 12

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 5, 2015) .............................. 17, 31, 37

*Johnson v. Midwest Logistics Systems, Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ...........................................28

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D.Mich.2000) ......................................................................27

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ....................9

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985) .........................34

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001)...................................................................................21

*Moulton v. U. S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009)...........35

*Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) ............................................................20

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).................................................................................24

*Rawlings v. Prudential–Bach Props., Inc.*, 9 F.3d 513 (6th Cir.1993) ...................................................................................26

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......14

*Rusgo and DePanicis, Inc. v. Walter J. Svenkesen Insurance Agency, Inc.*, Case No. 16-cv-12966 (E.D. Mich. September 19, 2017)...........................................................................31, 37

*Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) ...........................................32, 37

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) ...................32, 37

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013) .................................33

*Schlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978).........................22

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012).........................................18, 38

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...................................3

*Stanley v. U.S. Steel Co.*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009)...................................................................................26

*Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972).......13

*Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) ..................................20

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005).................30

*The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014)...............................................33, 38

*US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) ................25

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012).........................17

*Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich. July 30, 2015) .................................................................32

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983) ..........................................................................9

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ..........................................................................22

## Statutes

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................2

## Rules

Fed. R. Civ. P. 23 (c) (2) (B)............................................................10

Fed. R. Civ. P. 23 (e) (1) ...................................................................9

Fed. R. Civ. P. 23 (e) (1) (C).............................................................11

## Treatises

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) ....................................25

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005) .............................................9

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS
ACTIONS, § 13:80 (4th ed. Updated June 2008)..........................27

C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR
PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June
1990).......................................................................................32

Manual for Complex Litigation, Fourth § 14.121 (2004) .............23

Manual for Complex Litigation, Third, § 30.42 (1995).................12

# STATEMENT OF THE ISSUES

1.      Whether the settlement is fair, reasonable, and adequate to the class members.

2.      Whether the incentive award to Mark Wasvary for serving as the named plaintiff is fair and reasonable.

3.      Whether the agreed attorney's fee to Class Counsel of one third of the Settlement Fund plus expenses is fair, reasonable, and within the market rate for contingent fee, consumer class actions of this sort.

# CONTROLLING AUTHORITY

- Federal Rule of Civil Procedure 23

- *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)

- *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974)

- *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)

- *Blum v. Stenson*, 465 U.S. 886 (1984)

Plaintiff, Mark Wasvary ("Plaintiff"), on behalf of himself and the settlement class of similarly-situated persons ("Settlement Class" or "Class"), requests that the Court enter an order finally approving the parties' Settlement Agreement ("Settlement" or "Agreement.")

## INTRODUCTION

After notice to all Class members was sent, no Class member has objected or requested to be excluded from the Settlement. Further, notice was sent to the United States and Michigan state attorneys general (Doc. 73) and neither of them objected. Because the Settlement is fair, reasonable, and adequate, the Court should grant final approval to it.

## I.   Preliminary approval and dissemination of notice.

On January 23, 2018, after consideration of the Settlement Agreement and plan of notice, the Court entered an order preliminarily approving the Settlement and approving the class notice ("Preliminary Approval Order.") Doc. 78. In accordance with that Order, Plaintiff caused the class notice to be sent on January 29, 2018. Affidavit of Dorothy Sue Merryman. Exhibit A. Out of 35,260 members of the Class, none objected to the Settlement or chose to be excluded. Id.

## II.    Background and summary of settlement.

Plaintiff filed this case alleging that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and FCC regulations by sending unsolicited text messages to Plaintiff and a class of similarly-situated persons without their prior express invitation or permission. Defendants moved to dismiss, arguing that the case was moot based on an individual offer of judgment to Plaintiff and that Plaintiff consented to the text message. Docs. 13, 15, 18. Defendants further moved strike the class allegations. Doc. 16.

Plaintiff responded to the motion to dismiss and the motion to strike class allegations. Docs. 21, 26. The Court initially granted the motion to dismiss based on mootness, although the Court noted that Sixth Circuit precedent might soon be reversed by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Plaintiff moved to reconsider and asked that the case instead be stayed pending the Supreme Court decision. Doc. 33.

The Court granted the motion to reconsider and stay. Doc. 36. Following the issuance of *Campbell-Ewald* and briefing thereon (Docs. 38, 39), the Court vacated its dismissal order. Doc. 42.

Defendants again moved to dismiss, this time arguing that Plaintiff and the other class members lacked standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Doc. 51. Plaintiffs responded. Doc. 55.

The case proceeded with discovery. Based upon discovery, the Plaintiff has determined that Defendants likely sent unsolicited text messages in 2014 and 2015 to approximately 35,260 persons to whom Defendants allegedly sent.

The parties also explored settlement. A full day mediation was conducted on December 8, 2016, by independent mediator Jay Edelson of Edelson, P.C. Following the mediation, the parties negotiated a formal, written settlement agreement, proposed court orders, and proposed notice to the absent class members and have submitted that Agreement to the Court.

Ultimately, after reviewing and analyzing the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, the likelihood of a damage award in excess of that negotiated in this settlement, Defendants/ ability to pay a settlement or judgment, the protracted nature of the litigation, and the likelihood, costs, and possible outcomes of one or more procedural and

substantive appeals, Plaintiff and Defendants reached an agreement to settle this case on a class-wide basis. The Settlement was negotiated among the Parties, through counsel, in good faith, and at arm's length. It will resolve this suit entirely.

The key terms of the Agreement are as follows:

a.    <u>Certification of a Settlement Class</u>. The Parties have stipulated to certification of a Rule 23 (b) (3) "Settlement Class" defined as: "All cellular telephone account holders with a telephone number to which at least one text message was sent in 2014 or 2015 advertising the commercial availability or quality of Defendants' property, goods, or services and sent without the recipient's prior express written consent or permission to receive advertisements by text message or without informing them such consent was not a condition of purchase. The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone

number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

Excluded from the Settlement Class are Defendants and the Insurers, including any of their parents, subsidiaries, affiliates, or controlled persons, as well as their officers, directors, agents, servants, employees, and the immediate family members of such individuals. The Court preliminarily certified the settlement class. Doc. 78.

b.    <u>The Class Representative and Class Counsel</u>. The Court preliminarily appointed Plaintiff as the Class Representative and Plaintiff's attorneys (Phillip A. Bock of Bock & Hatch, LLC and Jason J. Thompson of Sommers Schwartz, P.C.) as Class Counsel for the Settlement Class. *Id.*

c.    <u>Monetary Relief to the Members of the Settlement Class</u>. Defendants have agreed to pay a total of $75,000.00 (the "Settlement Fund") for valid class member claims, the cost of settlement administration, an incentive payment to Plaintiff, and attorney's fees and litigation costs and expenses to Class Counsel,

as approved by the Court. This Settlement fund will all be paid out with no possible reversion to Defendants.

     d.   <u>Class Notice</u>. The parties notified the Settlement Class about the settlement by sending the notice and claim form by email for class members where Defendants have that information and by postcard mailing to all class members for whom Defendants lack an email address and class members for whom email notice bounced back. Merryman Declaration, <u>Exhibit A</u>. The notice includes instructions about opting out, objecting, or submitting a claim form by fax, mail, or online to the Claims Administrator and includes Class Counsel's direct dial telephone number for people to call with questions. *Id.*

     e.   <u>Claims</u>.

        (i)   <u>Claim Form</u>. Class members must identify themselves as the holder/owner of the particular cellular telephone numbers that were sent the text messages. The class notice includes a simple, one-page claim form for submitting claims for cash payments. The claim form is the fourth page of Exhibit 1 to the Merryman Declaration. On the

claim form, a class member must affirm that a cellular telephone number identified by Defendants' records as having been sent one or more of Defendants' text messages was the class member's cellular telephone number between January 1, 2014 and December 31, 2015, when the text messages at issue were sent.

A class member submitting a timely and valid Claim Form will be mailed a payment of the Class Member's proportional, *pro rata* share of the Settlement Fund after the payments of approved attorney's fees, administration cost, expenses, and any incentive award to Plaintiff. The claimant need not possess a copy of the text at issue, need not remember receiving it, and need not know anything about Defendants. Rather, the claimant must merely identify himself or herself as a member of the Settlement Class by verifying ownership of the targeted cellular telephone number(s) between January 1, 2014 and December 31, 2015.

(ii)   <u>Claims Administrator</u>.   Class-Settlements.com shall be the Claims Administrator and will issue the class

notice, maintain the settlement website, assist class members in completing and submitting forms, receive the claim forms, and provide a list of approved and rejected claims to counsel for the parties. The Claims Administrator will provide copies of all approved claim forms to counsel for the parties. The decision of the Claims Administrator regarding the approval of claims shall be final and binding.

      f.   <u>Release</u>. The Settlement Class will release all claims that were brought or could have been brought in this action against Defendants and the other released parties about Defendants' text messages during the Class Period.

      g.   <u>Attorney's Fees and Costs and Class Representative Award</u>. Class Counsel requests that the Court approve an award of attorney's fees equal to one-third of the Settlement Fund ($25,000.00), plus reasonable out-of-pocket expenses of up to $6,100.00 (including the cost of travel to the final approval hearing). In addition, Class Counsel requests that the Court approve payment of the settlement administrator in the amount of $27,900.00. <u>Exhibit C</u>. Class Counsel also requests the Court

approve an award of $2,500.00 to plaintiff, Mark Wasvary, for serving as the Class Representative.

## III. The Settlement Class was appropriately notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F.2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff caused the notice to be sent by e-mail to all class members with available, functional e-mail addresses, and by U.S. Mail (after consultation of the national Change of Address Database) to the remaining Class members. Exhibit A.

In this case, notice by e-mail with a mail backup is the best practicable notice available. Through discovery, Plaintiff was able to obtain the list of persons and entities who received text messages from Defendants in February 2006, most of which contained e-mail addresses.

E-mail notice comported with the due process obligations under Rule 23, particularly given Defendants' ability to pay and the size of the Settlement Fund. U.S. mail was used to send notice for class members for whom Defendants did not have a working e-mail address. This allowed for maximum reach to the class members.

Moreover, the content of the parties' notice complied with Rule 23 (c) (2) (B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all of those things. Exhibit A, Ex. 1.

Further, the Claim form at issue here was an easy to read and understand 1-page form. *Id.* Each Settlement Class Member merely had to provide their contact information and then verify ownership or use of the subject telephone number during the class period. *Id.* The Settlement

Class members did not have to provide printouts of the subject text message or attest to receiving it. Instead, they merely needed to identify themselves as a member of the class by stating their ownership/use of the telephone number in question at the time of Defendants' text messaging.

## ARGUMENT

### I.     The Court should approve the Settlement.

#### A.     Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

"[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v.*

11

*Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes.").

### B.  Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

Courts typically consider the following factors in evaluating a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and the class representatives; (6) the reaction of absent class members; and (7) the public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at *12 (N.D. Ohio 2011), *citing Int'l Union,* 497 F.3d at 632. Here, these factors show the settlement should be approved.

### 1.  The risk of fraud or collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the Settlement is not the product of collusion. Settlement was reached only after discovery on both the merits

and Defendants' ability to pay. The Settlement was the result of arms-length negotiations in mediation with a professional, independent mediator and between experienced counsel with an understanding of the strengths and weaknesses of their respective positions and with the assistance of an experienced mediator. Therefore, there is no indication that this Settlement was the product of collusion.

### 2. The complexity, expense and likely duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is no exception here. Had the litigation continued, there likely would have been one or more motions for summary judgment, possibly trial, and appeal. This Settlement permits the Class to obtain cash payments from the Settlement Fund without the risks and costs of further litigation.

### 3. The amount of discovery.

The parties engaged in sufficient discovery, including of Defendants' limited ability to pay a potential judgment, to allow them to make a fully informed decision prior to agreeing to the settlement terms.

Therefore, the stage of proceedings and amount of discovery supports final approval.

### 4.    Likelihood of success on the merits.

Defendants have shown that they lack the means to pay a substantial—or even modest—judgment in favor of the Class. To avoid the risk and uncertainty of this litigation Defendants have agreed to make available a Settlement Fund of $75,000.00. Every Class member had an opportunity to submit a claim by stating that they owned the telephone number on the relevant date in order to obtain their *pro rata* share of the Settlement Fund less administration costs, fees, expenses, and incentive award. This is likely to be approximately $10.00.

Due to the limited ability to collect, the risks and expenses involved in litigating this action, and the costs of pursuing appeals, reaching this Settlement is a fair, reasonable, and adequate result for the Class.

### 5.    Opinion of Class Counsel and the Class Representative.

Plaintiff and its counsel concluded that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions, particularly TCPA claims.

They have been appointed class counsel in dozens of cases. *See, e.g., American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. July 24, 2012), *affirmed by* 757 F.3d 540 (6th Cir. 2014); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Compressors Engineering Corp. v. Thomas*, Case No. 10-CV-10059 (E.D. Mich. Apr. 20, 2011); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D. N.J. 2013); *A & L Indus., Inc. v. P. Cipollini, Inc.*, 12-07598, 2013 WL 5503303 (D. N.J. 2013); *CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009); *CE Design, Ltd. v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, *6 (N.D. Ill. Dec. 13, 2010), *reversed on other grounds, CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011; *G.M. Sign, Inc. v. Finish Thompson, Inc.*,

No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010); *Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill., June 22, 2009); *Hinman v. M & M Rentals*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008); *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010).

Under these circumstances, the Court should give favorable weight to Class Counsel's opinions about the settlement.

### 6.   The reaction of absent class members.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the Class members overwhelmingly support the settlement. This is evidenced by the fact that no Class member objected to the settlement or chose to be excluded. Exhibit A. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately

99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

### 7. The public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed Settlement.

II.    **Attorneys' fees and expenses plus the cost of settlement administration from the Settlement Fund are fair, reasonable, and appropriate.**

Under the terms of the Agreement, Defendants will pay Class Counsel one-third of the Settlement Fund ($25,000.00) as attorneys' fees, plus their out-of-pocket litigation expense of $6,100.00 (including the cost of travel to the final approval hearing). Exhibit B. The cost of settlement administration is $27,900.00. Exhibit C. Defendants do not object to Plaintiff's requests for these amounts.

The attorneys undertook the case on a contingency basis and made a fund of money available to pay the class. It is well recognized that the attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Brent,* 2011 WL 3862363 at *19. The Court should approve this agreement, to which no one objects.

18

A. **The Court should approve Defendants' agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.**

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" *McCutchen*, 133 S.Ct. at 1550, *quoting Boeing*, 444 U.S. at 478. Moreover, the percentage of the fund method in a common fund settlement is appropriate as it "enhances efficiency" and "it better approximates the workings of the marketplace." *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

"[T]he Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *Stanley v. U.S. Steel Co.*, 2009 WL 4646647 at *1 (E.D. Mich. Dec. 8, 2009), *quoting Rawlings v. Prudential–Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005). "Particularly, where counsel's efforts create a substantial common fund for the benefit of the class, they are entitled to payment from the fund based on a percentage of that fund." *Id., citing Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986).

"Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement." *Stanley*, 2009 WL 4646647 at *1, *citing In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989); MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004). Here, the percentage fee requested is far below the lodestar value of counsel's time spent on the case.

**B.    The requested fee is within the market rate for this type of case.**

As discussed, the agreement calls for a one-third fee. That percentage falls within the approved range in class actions generally. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D.Mich.2000) (approving fees of 33% of the settlement fund); *Johnson v. Midwest Logistics Systems, Ltd.*, No. 11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (same); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass., 2005) (same); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D.Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir.2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *In re Cincinnati Gas & Elec.*, 643 F. Supp. 148, 150 (S.D.Ohio 1986); *In re Cincinnati Microwave*, No. C–1–95–905 (30% plus expenses); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D.Ky.1987) (40%); *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) (35.8%); *Bennett v. Roark Capital Group, Inc.*, Case No. 2:09-cv-00421, 2011 WL

1703447 at *2 (D. Maine, 2011) (33% of fund "reflects a fee that is customary."); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions*); Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees). See also ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million).

Moreover, that percentage falls within the market rate of TCPA cases. *See Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (awarding one third of fund); *Rusgo and DePanicis, Inc. v. Walter J. Svenkesen Insurance Agency, Inc.*, Case No. 16-cv-12966 (E.D. Mich. September 19, 2017) (Parker, J.) (Doc. 32) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-cv-10010 (E.D.

Mich. Apr. 5, 2015) (Tarnow, J.) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013) (35% fee).

Here, the Class Notice informed the Settlement Class about the attorneys' fees and no one objected. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

Class Counsel undertook this case on a contingency basis. Class Counsel have been litigating TCPA class actions and the resulting coverage actions since 2003, and have litigated other types of class actions for many more years. They faced risk of nonpayment, not only for their time, but also for their out-of-pocket costs. The Court should

24

approve the agreement to pay them attorneys' fees of $25,000.00, plus expenses of $6,100.00 (including the cost of travel to the final approval hearing) (Expenses, Exhibit B) because that amount is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances.

## III. The Court should approve the agreed incentive payment to Plaintiff.

Additionally, the Court should approve the Parties' agreement that Plaintiff will receive $2,500.00 from the Settlement Fund as an incentive award for serving as the Class Representative. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F.3d 344, 351-52 (6th Cir. 2009); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving class incentive awards of $8,000, $9,000, and $14,000); *Cook,* 142 F.3d at 1016 (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives). In *In re Lupron*, the court noted that incentive awards serve an important function:

> Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation. *Denny v. Jenkins & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Courts 'routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation.' *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2000). 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' *In re Compact Disc*, 292 F. Supp. 2d at 189. [*In re Lupron Mktg. and Sales Practice*

*Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005)]

Here, the Parties agreed to an incentive award similar to those awarded in other TCPA cases. *See Rusgo* ($15,000 award); *Imhoff* (same); *Jackson's* (same); *Wagner* (same); *Heel* (same); *Siding & Insulation* (same); *Hawk Valley* (same); *Trynex* (same).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992), *citing* C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representative in this case was no exception. But for Plaintiff's initiative and participation, the benefits available to the Class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## CONCLUSION

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class.

27

Respectfully submitted,

s/ David M. Oppenheim
One of Plaintiff's attorneys

Jason J. Thompson
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: 800/783-0989
Email:
jthompson@sommerspc.com

Phillip A. Bock
David M. Oppenheim
Tod A. Lewis
BOCK, HATCH, LEWIS &
OPPENHEIM LLC
134 N. La Salle Street, Suite
1000
Chicago, IL 60602
Telephone: 312/658-5500

28

## CERTIFICATE OF E-FILING AND SERVICE

I hereby certify that on April 9, 2018, I electronically filed the foregoing using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

s/ David M. Oppenheim